**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHELTERED COVE MARINA, LLC,<br>Plaintiff,<br>v.<br>REGAL BOATS MARINE INDUSTRIES, INC. *d/b/a* REGAL BOATS,<br>Defendant. | Civil Action No. 26-3627 (MAS) (JTQ)<br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon two motions: (1) Plaintiff Sheltered Cove Marina, LLC's ("Plaintiff" or "Sheltered Cove") Motion for an Order to Show Cause for a Preliminary Injunction (the "PI Motion") against Defendant Regal Boats Marine Industries, Inc. ("Defendant," "Regal," or "Regal Boats") (ECF No. 3); and Defendant's Motion to Transfer to the United States District Court for the Middle District of Florida (ECF No. 53). Defendant opposed Plaintiff's motion (ECF No. 19), and Plaintiff replied (ECF No. 21). The Court issued an Order to Show Cause directing Plaintiff to supplement its proofs in connection with the PI Motion (ECF No. 29), which Plaintiff responded to (ECF No. 32). Thereafter, the Court held oral argument on the PI Motion. (*See* ECF No. 38.) Defendant subsequently filed its motion, which Plaintiff opposed (ECF No. 54), and Defendant replied (ECF No. 55). For the reasons below, Defendant's motion is granted, and Plaintiff's PI Motion is denied without prejudice as moot.

# I. BACKGROUND[1]

## A. Factual Background

This matter arises from a dispute between the parties regarding Defendant's representation that it intends not to renew an agreement it has with Plaintiff. (*See generally* Compl., ECF No. 1.) Plaintiff, a New Jersey corporation with its principal place of business in Tuckerton, New Jersey, "has been part of the New Jersey business community for over thirty . . . years" and is "now one of New Jersey's largest privately owned marinas[.]" (Compl. ¶¶ 11, 15.) Defendant, a Florida corporation with its principal place of business in Orlando, Florida, "manufactures a wide range of premium fiberglass boats" and "specializes in manufacturing luxury performance boats and yachts utilizing advanced manufacturing techniques like vacuum infusion to produce durable, high-performance recreational boats." (*Id.* ¶¶ 12, 16.)

Since 2008, the parties have had a written arrangement "designating Sheltered Cove as the exclusive authorized dealer for selling Regal Boats'[s] products in part of New Jersey[.]" (*Id.* ¶ 28.) In 2025, the parties executed the most recent agreement (the "2025 Agreement") which was set to expire on June 30, 2026. (*Id.* ¶ 30; *see generally* Ex. 1 to Compl. (the "2025 Agreement"), ECF No. 1-1.) The 2025 Agreement requires that Sheltered Cove fulfill certain marketing, training, and staffing obligations. (Compl. ¶ 34; *see generally* 2025 Agreement.) For example, the 2025 Agreement requires Sheltered Cove to: (1) maintain a dedicated line of credit (2025 Agreement § 3 ¶ 3); (2) participate in Regal's "marketing and promotional activities" (*id.* § 3 ¶ 5), including displaying Regal products at various boat shows (*id.* at Ex. B.7); (3) agree to "continue to showcase

---

[1] For the purpose of considering the motion to transfer, the Court "accept[s] as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (citations omitted).

Regal[ Boats's products] in their indoor showroom and [m]arina as the seasons permit" (*id.*); and (4) commit to $3,500,000 in product purchases from Regal (*id.* at Ex. B1).

The 2025 Agreement also contains a venue provision which provides that "[e]xclusive venue for any dispute arising under or out of this [2025] Agreement shall be conducted in Orange County, in the State of Florida or a venue so designated by [Regal Boats]." (2025 Agreement § 10 ¶ 4.) Moreover, the 2025 Agreement has a provision on the "[r]elationship of the [p]arties" which states that "[Sheltered Cove] and its owners and employees **are not** employees, agents[,] or franchisees of [Regal Boats]" and that "[t]his [2025] Agreement is not intended to create or constitute a franchise agreement or a franchisor-franchisee relationship." (*Id.* § 10 ¶ 6 (emphasis in original).)

On December 4, 2025, Jack Kuck ("Kuck"), the Vice President of Sales and Marketing for Regal Boats, sent correspondence to Mark Hattman ("Hattman"), President of Sheltered Cove, indicating that Regal Boats did not intend to renew the 2025 Agreement with Sheltered Cove due to an "incurable breach" by Sheltered Cove. (Compl. ¶¶ 64-66; *see generally* Ex. 5 to Compl. (the "Dec. Correspondence"), ECF No. 1-5.) Kuck noted that Regal Boats "observed that additional new product lines [were] . . . being advertised and promoted on [Sheltered Cove's] website and related media channels" even though Regal Boats "did not receive the contractually required thirty . . . days prior written notice before these new lines were introduced." (Dec. Correspondence 1 (emphasis omitted).) Kuck indicated that the correspondence served as Regal Boats's "formal Notice of Default" under the 2025 Agreement, and that as a result, Regal Boats decided not to renew the 2025 Agreement with Sheltered Cove. (*Id.* (emphasis omitted).)

After receiving the correspondence, Hattman contacted Kuck "directly to explain that Sheltered Cove was not moving forward with the new product line at issue." (Compl. ¶ 70.)

Thereafter, Hattman traveled to Regal Boats's headquarters in January 2026 "in an attempt to resolve the dispute[.]" (*Id.* ¶ 71.) On March 5, 2026, Kuck sent e-mail correspondence to Hattman indicating that Regal Boats intended to move forward with its decision not to renew the 2025 Agreement. (*Id.* ¶ 80; *see generally* Ex. 6 to Compl. (the "March E-mail Correspondence"), ECF No. 1-6.) On March 16, 2026, Sheltered Cove's counsel sent correspondence to Regal Boats indicating its understanding that Regal Boats's decision not to renew the 2025 Agreement "constituted an unlawful termination in violation of the New Jersey Franchise Practices Act [(the 'NJFPA')] and related contractual obligations." (Compl. ¶ 82; *see generally* Ex. 7 to Compl., ECF No. 1-7.) On March 27, 2026, Regal Boats's counsel reiterated that Regal Boats "would not be rescinding its non-renewal decision." (Compl. ¶ 86.)

**B. Procedural Background**

On April 6, 2026, Sheltered Cove filed its Complaint against Regal Boats, alleging five causes of action: (1) violation of the NJFPA; (2) breach of the 2025 Agreement; (3) declaratory judgment that "Sheltered Cove continues to be Regal Boats'[s] exclusive authorized dealer in the [specified] territory" and "all previous efforts . . . to terminate, cancel, or not renew Sheltered Cove as its exclusive authorized dealer in specified New Jersey counties have no force or effect" and an injunction enjoining Regal Boats from terminating Sheltered Cove as its exclusive authorized dealer in the territory; (4) breach of good faith and fair dealing; and (5) tortious interference. (*Id.* ¶¶ 102-27.) That same day, Sheltered Cove filed the PI Motion seeking emergent relief preventing Regal Boats from not renewing or terminating the 2025 Agreement it has with Sheltered Cove. (*See generally* Prelim. Inj. Mot. (the "PI Mot."), ECF No. 3.) The Court held a telephone conference on April 23, 2026, to discuss the PI Motion. (*See* Apr. 23, 2026, Minute Entry, ECF

No. 17.) Thereafter, Regal Boats filed its opposition brief[2] (Def.'s Opp'n Br., ECF No. 19), and Sheltered Cove replied (Pl.'s Reply Br., ECF No. 21).

On June 4, 2026, the Court issued an Order to Show Cause directing Plaintiff to "e-file correspondence supplementing the proofs provided to the Court" regarding its satisfaction of certain requirements under the NJFPA. (O.S.C. 3, ECF No. 29.) The Court also gave Defendant an opportunity to "e-file correspondence providing any supplemental evidence it may wish to provide[.]" (*Id.*) Both parties filed correspondence in response to the Court's Order to Show Cause. (*See* Pl.'s June 15, 2026, Correspondence, ECF No. 32; Def.'s June 15, 2026, Correspondence, ECF No. 33.) The Court subsequently held oral argument on the PI Motion on June 23, 2026. (*See* June 23, 2026, Minute Entry, ECF No. 38.)

On June 25, 2026, the parties jointly filed correspondence indicating that they "have agreed to a thirty (30)-day extension of the June 30, 2026, expiration date of the existing 2025 Agreement in an effort to facilitate settlement negotiations[.]" (June 25, 2026, Joint Correspondence, ECF No. 35.) In response, the Court administratively terminated the PI Motion. (June 25, 2026, Text Order.) On July 10, 2026, Regal Boats filed correspondence seeking leave to file a motion to transfer venue (Def.'s July 10, 2026, Correspondence, ECF No. 40), which the Court deferred addressing while the parties engaged in settlement discussions, but provided that "Defendant may renew its request for leave to file such a motion at the appropriate time[.]" (July 15, 2026, Text Order, ECF No. 41.)

On July 20, 2026, Magistrate Judge Quinn held a settlement conference between the parties. (*See* July 15, 2026, Text Order, ECF No. 42.) The settlement conference was unsuccessful,

---

[2] The same day Regal Boats filed its opposition brief to the PI Motion, it also filed its Answer to Sheltered Cove's Complaint. (Answer, ECF No. 18.)

and the parties subsequently filed correspondence where Plaintiff asked the Court to reinstate the PI Motion and Defendant asked the Court to grant leave for it to file a motion to transfer. (*See* Pl.'s July 24, 2026, Correspondence, ECF No. 46; Def.'s July 27, 2026, Correspondence, ECF No. 47.) The Court thereafter held a telephone status conference. (July 28, 2026, Text Order, ECF No. 48.) Following the conference, the parties submitted correspondence indicating that they "have agreed to a thirty (30)-day extension of the July 31, 2026[,] expiration date" to the 2025 Agreement and requesting a briefing schedule for the motion to transfer, which the Court entered. (July 29, 2026, Correspondence, ECF No. 49; Aug. 3, 2026, Letter Order, ECF No. 52.)

On August 7, 2026, Regal Boats filed its Motion to Transfer (Mot. to Transfer, ECF No. 53.) Sheltered Cove opposed (Pl.'s Opp'n Br., ECF No. 54), and Regal Boats replied (Def.'s Reply Br., ECF No. 56).

## II. LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A forum selection clause, which "is treated as a manifestation of the parties' preferences as to a convenient forum[,]" *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir 1995), "may be enforced through a motion to transfer under [Section] 1404(a)[,]" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W.D. Tex.*, 571 U.S. 49, 59 (2013). "In federal court, the effect to be given [to] a contractual forum selection clause in diversity cases is determined by federal[,] not state law." *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 563 (D.N.J. 2000) (quoting *Jumara*, 55 F.3d at 877).

In determining whether to transfer, courts place great weight on valid forum selection clauses. *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000); *Cadapult Graphic Sys.*, 98 F. Supp. 2d at 564. "[W]here contracting parties have specified the forum in which they will litigate disputes arising from their contract, federal courts must honor the forum[ ]selection clause '[*i*]*n all but the most unusual cases*[.]'" *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 397 (3d Cir. 2017) (second alteration in original) (emphasis added) (quoting *Atl. Marine*, 571 U.S. at 66).

Accordingly, where a valid forum selection clause exists, the traditional Section 1404(a) analysis is modified in three ways. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (citing *Atl. Marine*, 571 U.S. at 63). "First, no weight is given to the plaintiff's choice of forum." *Id.* (citing *Atl. Marine*, 571 U.S. at 63). Second, the district court only considers public interest factors, rather than arguments about the parties' private interests. *Id.* (citing *Atl. Marine*, 571 U.S. at 64). "[B]ecause the public interest factors . . . 'will rarely defeat a transfer motion, the practical result is that forum[ ]selection clauses should control except in unusual cases.'" *Id.* at 57-58 (quoting *Atl. Marine*, 571 U.S. at 64). Third, when a case is transferred due to a forum selection clause, "a [Section] 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.* at 57.

## III. DISCUSSION

The parties bring two separate motions: (1) Plaintiff's PI Motion (*see generally* PI Mot.); and (2) Defendant's Motion to Transfer (*see generally* Mot. to Transfer). The Court turns to Defendant's Motion to Transfer and need not reach Plaintiff's PI Motion for the reasons noted below.

Defendant argues that this matter should be transferred to the United States District Court for the Middle District of Florida because the 2025 Agreement "contains a mandatory forum-selection clause designating Orange County, Florida as the exclusive venue for all disputes arising under the [2025] Agreement." (Def.'s Moving Br. 1, ECF No. 53-1.) In opposition, Plaintiff argues that transfer is not appropriate because: (1) the forum selection clause is not controlling under the NJFPA and is therefore not enforceable; (2) Defendant's arguments for "alternative grounds for transfer" are unavailing; and (3) Defendant's delay in seeking transfer prejudices Plaintiff. (Pl.'s Opp'n Br. 6-15.)

The 2025 Agreement contains a forum selection clause, which provides that: "Exclusive venue for any dispute arising under or out of this [2025] Agreement shall be conducted in Orange County, in the State of Florida or a venue so designated by [Regal Boats]." (2025 Agreement § 10 ¶ 4.) In analyzing whether the case should be transferred pursuant to this forum selection clause, the Court's analysis must proceed in two steps: "*first*, the [C]ourt must consider whether the forum selection clause is enforceable and applicable; and *second*, the [C]ourt must apply the Section 1404(a) factors." *Inamdar v. Massage Luxe Int'l, LLC*, No. 25-6045, 2026 WL 1469609, at *3 (D.N.J. May 26, 2026) (emphases in original) (first citing *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 97 (3d Cir. 2018); and then citing *Collins ex rel. herself v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017)).

### A. The Forum Selection Clause is Enforceable

The question of whether the forum selection clause at issue is enforceable is one of federal law. *See In re McGraw-Hill*, 909 F.3d at 58. Under federal law, there is "a strong presumption in favor of enforcing" such clauses. *In re Howmedica*, 867 F.3d at 403. "Specifically, forum selection clauses 'should be enforced unless enforcement is shown by the resisting party to be

"unreasonable" under the circumstances.'" *Inamdar*, 2026 WL 1469609, at *4 (quoting *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991)). "A forum selection clause is 'unreasonable' where the [party resisting enforcement] can make a 'strong showing' either that the forum thus selected is 'so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court,' or that the clause was procured through 'fraud or overreaching.'" *Id.* (first alteration in original) (quoting *Foster*, 933 F.2d at 1219). "A party may also resist enforcement by showing 'how enforcement of the forum selection clause[] would "contravene a strong public policy"' of the forum state." *Id.* (alteration in original) (quoting *Collins*, 874 F.3d at 181); *see also In re Exide Techs.*, 544 F.3d 196, 218 n.15 (3d Cir. 2008) ("A forum[ ]selection clause is presumptively valid and will be enforced unless the party objecting to its enforcement demonstrates that enforcement of the clause would violate a strong public policy of the forum.").

Plaintiff relies on this last factor in arguing that the forum selection clause is not enforceable because its enforcement would contravene a strong public policy of New Jersey. (*See* Pl.'s Opp'n Br. 7-10.) "New Jersey's public policy in this area is well established." *Inamdar*, 2026 WL 1469609, at *4. In *Kubis & Perszyk Associates, Inc. v. Sun Microsystems, Inc.*, the Supreme Court of New Jersey explained that New Jersey's public policy, as articulated in the NJFPA, is "to level the playing field for New Jersey franchisees and prevent their exploitation by franchisors with superior economic resources." 680 A.2d 618, 628 (N.J. 1996). Keeping this policy in mind, the New Jersey Supreme Court warned that "[t]he general enforcement of forum[ ]selection clauses in franchise agreements would frustrate that legislative purpose, and substantially circumvent the public policy underlying the [NJFPA]" and held that "forum[ ]selection clauses in franchise agreements are presumptively invalid." *Id.* at 627-28.

As this Court recently recognized, however, "it is important to distinguish New Jersey's public policy from how that public policy is *effectuated and enforced* by New Jersey courts" as "[t]he former is a basis for non-enforcement of a forum selection clause under federal law, . . . while the latter is of minimal, if any, relevance to the question of enforcement[.]" *Inamdar*, 2026 WL 1469609, at *5 (emphasis in original) (first citing *Collins*, 874 F.3d 181; and then citing *In re McGraw-Hill*, 909 F.3d at 58). In fact, "[t]he *Kubis* Court's reference to public policy to justify the presumption against enforceability reveals that the presumption is not *itself* the public policy. Instead, the presumption is merely the means chosen by the New Jersey courts of *achieving* that policy." *Id.* (emphasis in original). As such, "[t]his Court is not bound by the means of enforcement chosen by the *Kubis* Court" and "[s]ubstituting *Kubis's* presumption against enforcing forum selection clauses for the federal presumption in favor of enforcing such clauses . . . would essentially transform a quintessential question of federal law into a question of state law." *Id.* (citations omitted); *see also In re McGraw-Hill*, 909 F.3d at 58 ("Federal law controls the question of whether to enforce a forum selection clause." (citations omitted)); *Great Lake Ins. SE v. Raiders Retreat Realty Co.*, 601 U.S. 65, 77 (2024) ("A federal presumption of enforceability would not be much of a presumption if it could be routinely swept aside based on 50 States' public policy determinations."); *Saul v. Seeking Alpha Inc.*, No. 23-1405, 2023 WL 8091852, at *3 n.2 (D.N.J. Nov. 21, 2023) ("The Court also notes that even assuming *arguendo* that *Kubis* was applicable to the instant matter, state law is not dispositive on a motion to transfer venue. Federal law determines whether a forum selection clause is enforceable.").

Here, Plaintiff has not made any showing—let alone the requisite "strong showing"—that enforcement of this forum selection clause would violate New Jersey's public policy of "level[ing] the playing field[.]" *Inamdar*, 2026 WL 1469609, at *5 (quoting *Kubis*, 680 A.2d at 628); *Foster*,

933 F.2d at 1219. Nor do the facts as presented to this Court suggest that Sheltered Cove is on such an unlevel playing field with Regal such that public policy weighs in favor of this Court protecting Sheltered Cove and interfering in the terms negotiated between Sheltered Cove and Regal. Moreover, instead of making any affirmative case for why enforcing the forum selection clause would contravene the public policy articulated in *Kubis*, Plaintiff rests its entire argument regarding whether the forum selection clause is enforceable on the argument that because "Sheltered Cove has pled a valid and plausible NJFPA claim,[3] . . . the forum selection clause is presumptively invalid and unenforceable." (Pl.'s Opp'n Br. 9.) "Because this presumption is inapplicable as a matter of federal law, [Sheltered Cove's] argument fails to overcome the federal presumption in favor of enforcing the forum selection clause" *Inamdar*, 2026 WL 1469609, at *5, and the Court therefore concludes that the forum selection clause is enforceable.[4]

**B. The Public Interest Factors Weigh in Favor of Transfer**

Because the Court found that the forum selection clause is enforceable, it now turns to the consideration of factors outlined in *Atlantic Marine*. *See Collins*, 874 F.3d at 186 (citing *Atl. Marine*, 571 U.S. at 63). Under this framework, the Court must consider "the availability of an adequate alternative forum where defendant[] [is] amenable to process and plaintiff['s] claims are

---

[3] Notably, the Court need not reach the issue of whether Plaintiff has adequately alleged a viable claim under the NJFPA.

[4] "For the present analysis to apply, the [f]orum [s]election [c]lause must be mandatory and the action must fall within its scope." *Inamdar*, 2026 WL 1469609, at *5 n.10 (first citing *Collins*, 874 F.3d at 186; and then citing *Newark Ave. Ctr. Assocs., L.P. v. Dong*, No. 25-14474, 2025 WL 3514492, at *2 (D.N.J. Dec. 8, 2025)). Here, the dispute falls under the forum selection clause and the forum selection clause is mandatory, as it requires in part, and as is relevant here, that "[e]xclusive venue for any dispute arising under or out of this [2025] Agreement shall be conducted in Orange County, in the State of Florida . . . ." (2025 Agreement § 10 ¶ 4); *see Collins*, 874 F.3d at 185 n.8 ("There is no dispute in this case that the [a]greements' forum selection clauses were mandatory in effect, *requiring* parties to bring the claims in Texas state court, rather than just permissive." (emphasis in original) (citation omitted)).

cognizable" and "relevant 'public interest' factors affecting the convenience of the forum" in evaluating whether the forum selection clause warrants transfer.[5] *Id* (citation omitted); *see Atl. Marine*, 571 U.S. at 63-64. The factors "will overcome a forum selection clause in only the most 'unusual' and 'extraordinary' circumstances." *Collins*, 874 F.3d at 186 (quoting *Atl. Marine*, 571 U.S. at 62, 64). Sheltered Cove, "[a]s the party resisting the application of [the] forum selection clause, . . . bears a heavy burden" of showing the case should not be transferred. *Id.* at 186-87 (citing *Atl. Marine*, 571 U.S. at 64).

Here, with respect to the adequate-alternative-forum factor, Defendant is a Florida corporation and, as a result, is amenable to process in the Middle District of Florida. (*See* Compl. ¶ 12.) The Court therefore sees no reason why this factor could caution against transfer.

With respect to the public interest factors, the Court considers factors such as: (1) "administrative difficulties flowing from court congestion; [(2)] the local interest in having localized controversies decided at home; [and] [(3)] the interest in having the trial of a diversity case in a forum that is at home with the law." *Collins*, 874 F.3d at 186 n.9 (second alteration in original) (quoting *Atl. Marine*, 571 U.S. at 62 n.6).

*First*, administrative difficulty and court congestion *strongly* favor transfer. As of June 30, 2026, the District of New Jersey had over 95,000 cases pending, with an average number of 5,588 pending cases per judge. *U.S. District Court – Judicial Caseload Profile*, U.S. Cts. 15 (June 30, 2026), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2026.pdf. In contrast, in that same statistical report, the Middle District of Florida is noted as having 9,850 cases pending, with an average of 657 pending cases per judge. *Id.* at 91.

---

[5] The Court need not discuss the private interest factors or Plaintiff's arguments related thereto because, due to the enforceable forum selection clause, the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64.

*Second*, New Jersey and Florida both have local interests in resolving this dispute, so this factor is, at best, neutral. "While *Kubis* and the NJFPA show that New Jersey has an interest in protecting its franchisees," Florida also undoubtedly has an interest in regulating its businesses. *Inamdar*, 2026 WL 1469609, at *6; *see, e.g.*, *Bella & Boise Rock, LLC v. We Rock the Spectrum, LLC*, No. 17-3628, 2018 WL 844398, at *7 (D.N.J. Feb. 13, 2018) (finding the local interest factor neutral and noting that "California has an interest in regulating and protecting its corporations as does New Jersey").

*Third*, the familiarity with the applicable law is neutral. "[I]t seems somewhat doubtful that the NJFPA will apply in this case after it is transferred" as the Supreme Court in *Atlantic Marine* noted "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a [Section] 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Inamdar*, 2026 WL 1469609, at *7 (quoting *Atl. Marine*, 571 U.S. at 64). Even if the NJFPA continues to apply, however, "that still would not preclude transfer[ a]s the New Jersey Supreme Court explained in *Kubis*, '[w]e have no doubt that courts in other states, both state and federal, would faithfully and fairly apply the [NJFPA] to suits within their jurisdiction involving issues controlled by that statute.'" *Id.* (second alteration in original) (quoting *Kubis*, 680 A.2d at 628).

As such, the Court finds that the only public interest factor that strongly weighs in favor of one outcome is that of the administrative difficulty and court congestion. The other two factors are neutral. As Plaintiff has fallen short of its "heavy burden" of demonstrating that "'unusual' and

'extraordinary' circumstances" overcome the forum selection clause, *Collins*, 874 F.3d at 186 (quoting *Atl. Marine*, 571 U.S. at 62, 64), the Court finds that transfer is appropriate.[6]

The Court, accordingly, grants Defendant's Motion to Transfer and transfers this matter to the United States District Court for the Middle District of Florida.[7]

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion is granted and Plaintiff's PI Motion is denied without prejudice as moot. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: August 26, 2026

[6] Plaintiff argues that a transfer at this stage, four months after Plaintiff initiated the action and filed its PI Motion, would waste judicial resources and prejudice Plaintiff. (*See* Pl.'s Opp'n Br. 13-15.) The Court finds such an argument unavailing in light of the "strong presumption in favor of enforcing forum[ ]selection clauses[.]" *In re Howmedica*, 867 F.3d at 403.

[7] Because the Court finds that transfer is appropriate, it need not reach Plaintiff's PI Motion, and therefore denies it without prejudice as moot. The Court notes, however, that Plaintiff brought its PI Motion in April 2026, even though it first received notice of Defendant's intent not to renew the 2025 Agreement as early as December 4, 2025, when Kuck sent correspondence to Hattman indicating that Regal Boats did not intend to renew the 2025 Agreement with Sheltered Cove due to an "incurable breach" by Sheltered Cove. (Compl. ¶¶ 64-66; *see generally* Dec. Correspondence.) Such a delay shows the likely lack of irreparable harm that Plaintiff faces should the 2025 Agreement, as extended by the parties' agreement, not renew at the end of this month. *See, e.g.*, *Messina v. Coll. of N.J.*, 566 F. Supp. 3d 236, 249 (D.N.J. 2021) ("[A]ny purported harm [p]laintiffs may face is a consequence of their own delay because they waited over four months to request injunctive relief." (citations omitted)); *H-1 Auto Care, LLC v. Lasher*, No. 21-18110, 2022 WL 13003468, at *4 (D.N.J. Oct. 21, 2022) ("Many courts have found that a delay of just weeks or months precludes a showing of irreparable harm." (citing *Logic Tech. Dev. LLC v. Levy*, No. 17-4630, 2021 WL 3884287, at *3 (D.N.J. Aug. 31, 2021))); *New Dana Perfumes Corp. v. The Disney Store, Inc.*, 131 F. Supp. 2d 616, 630 (M.D. Pa. 2001) ("[T]here is an unexplained delay of two months in presenting a cease and desist letter, and another unexplained delay of five months in moving for injunctive relief. Under these circumstances, plaintiffs' delay, alone, precludes a finding of irreparable harm . . . ."); *Pharmacia Corp. v. Alcon Lab'ys, Inc.*, 201 F. Supp. 2d 335, 383 (D.N.J. 2002) (noting that a lengthy delay "knocks the bottom out of any claim of immediate and irreparable harm" (citation omitted)).